SEALED

ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **TO BE FILED UNDER SEAL** |
| | § | |
| v. | § | No. |
| | § | |
| STANLEY THAW (1) | § | **3-12CR-261-P** |
| MICHAEL KINCAID (2) | § | |
| KERNELL THAW (3) | § | |

## INDICTMENT

The Grand Jury charges:

### Introduction

At all times material and relevant to this indictment:

### The Medicare Program

1.      The Medicare Program (Medicare) was a federal program that provided health care benefits to certain individuals, including those age 65 years or older, blind, or disabled.   Individuals who received benefits under Medicare were often referred to as "beneficiaries."   Medicare was a "health care benefit program" as defined by 18 U.S.C. § 24(b).

2.      The Medicare program in Texas was administered by TrailBlazer Health Enterprises, LLC, located in the Northern District of Texas, Dallas Division, which had a contract with the Medicare program to process claims for reimbursement for medical services, including, but not limited to, hyperbaric oxygen therapy (HBOT).

Indictment – Page 1

3.      HBOT is a therapy used to assist in healing diabetic sores or amputations in an outpatient hospital setting.   HBOT was administered by placing the patient in a hyperbaric oxygen chamber to receive increased levels of oxygen.   A session of HBOT was commonly referred to as a "dive."   Each dive or session of HBOT began when the patient entered the chamber and concluded when the patient exited.   A dive or session usually lasted between ninety minutes and two hours, but could be less or more, depending on the patient's tolerance.   The physician did not administer or assist with the actual HBOT.   The physician only was present to ensure the patient was medically appropriate for the HBOT on that particular day, and to treat any medical emergency that arose during the session, such as a stroke or heart attack.

4.      Medicare reimbursed separately the hospital for each dive or session of HBOT.   Medicare also reimbursed the physician for the attendance and supervision of the dive or session.   For billing purposes Medicare directed physicians to describe this attendance and supervision by using Current Procedural Terminology (CPT) code 99183.   CPT codes were shorthand descriptors of services defined by the American Medical Association and widely available to health care providers.   CPT code 99183 was defined as the "physician['s] attendance and supervision of hyperbaric oxygen, per session."   Medicare would pay a physician a set fee under CPT code 99183 for the supervision and attendance of each session or dive, regardless of how long each session or dive lasted.

The Defendants

5.      **Stanley Thaw,** from on or about June 9, 2004, through the present was, at various times, president, chief executive officer, member, registered agent, and co-owner of HBO2Works, LLC; HBO2Works Houston, LLC; HBO2Works San Antonio; and Cross Hyperbaric of Texas, PLLC.

6.      **Michael Kincaid,** from on or about 2005, through the present was, at various times, manager, member, chief operating officer, and co-owner of HBO2Works, LLC; HBO2Works Houston, LLC; HBO2Works San Antonio; and Cross Hyperbaric of Texas, PLLC.

7.      **Kernell Thaw,** from on or about 2005, through the present was, at various times, vice-president, manager, and/or majority owner of HBO2Works, LLC; HBO2Works Houston, LLC; HBO2Works San Antonio; and Cross Hyperbaric of Texas, PLLC.   At all times, **Kernell Thaw** was the bookkeeper for all of the companies.

The HBO2Works Companies

8.      **Stanley Thaw, Michael Kincaid,** and **Kernell Thaw,** beginning on or about June 2004, the exact date unknown to the Grand Jury, formed HBO2Works, LLC under the laws of the State of Texas.   The original place of business listed on State of Texas corporate documents was 2532 Pelican Bay Drive, Plano, Texas, a residence of **Stanley Thaw** and **Kernell Thaw.**

9.      HBO2Works, LLC opened in Denton, Texas, on or about July 2005, but moved to Hurst, Texas, on or about September 2006.   **Stanley Thaw, Michael Kincaid,**

and **Kernell Thaw** formed HBO2Works Houston, LLC on or about September 2008, and

HBO2Works San Antonio on or about June 2009.   All three HBO2Works companies

employed physicians to attend and supervise HBOT sessions at various hospitals

throughout Texas.

10.    On or about 2005, the exact date unknown to the Grand Jury, **Stanley Thaw**

approached Person A, a physician in Houston, about starting a company to supervise

HBOT.   On or about February 2005, the exact date unknown to the Grand Jury, **Stanley**

**Thaw** and **Michael Kincaid**, along with Person A, formed Cross Hyperbaric of Texas,

PLLC, and began the process to enroll as a Medicare provider.

11.    In the various enrollment forms submitted to Medicare on or about June 13,

2005, the provider of items and services disclosed to Medicare was Cross Hyperbaric of

Texas, PLLC.   The application listed the place of business in Plano, Texas, at the same

residence of **Stanley Thaw** and **Kernell Thaw** as was identified for HBO2Works, LLC.

The Medicare enrollment application did not mention HBO2Works, LLC.

12.    Cross Hyperbaric of Texas, PLLC received Medicare provider number

***99Z on or about August 30, 2005.   **Stanley Thaw** and **Michael Kincaid** caused all

claims for reimbursement from Medicare to be submitted under Cross Hyperbaric of

Texas, PLLC's provider number.

13.    Person A did not treat any patients and was not involved in the business of

Cross Hyperbaric of Texas, PLLC or any of the various HBO2Works companies.   **Stanley**

**Thaw** and **Michael Kincaid** paid Person A to use his Medicare provider number to seek

reimbursement from Medicare.   Person A allowed **Stanley Thaw** and **Michael Kincaid** to submit the application to Medicare on his behalf, as well as sign his name to all Medicare documents relating to Cross Hyperbaric of Texas, PLLC or the HBO2Works companies. Cross Hyperbaric of Texas, PLLC; HBO2Works, LLC; HBO2Works Houston, LLC; and HBO2Works San Antonio all used various billing agents to submit claims for reimbursement to Medicare and other health care benefit programs, but at all times, **Stanley Thaw** and **Michael Kincaid** instructed each billing agent which CPT and diagnoses codes were to be submitted to Medicare and other federal health care benefit programs for reimbursement.

## Count One
### Conspiracy to Commit Health Care Fraud
(Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347))

14.     The Grand Jury adopts, realleges, and incorporates by reference all the allegations set forth in the Introduction of this Indictment.

### The Conspiracy

15.     Beginning on or about January 2008, the exact date being unknown to the Grand Jury, and continuing through at least on or about June 2011, in the Dallas Division of the Northern District of Texas, and elsewhere, the defendants, **Stanley Thaw** and **Michael Kincaid,** did knowingly, intentionally, and willfully combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury, to commit certain offenses against the United States, that is, to knowingly and willfully execute, and attempt to execute, a scheme and artifice:   (a) to defraud Medicare and other health care benefit programs as defined in 18 U.S.C. § 24(b); and (b) to obtain money and property owned by and under the custody and control of Medicare and other health care benefit programs as defined in 18 U.S.C. § 24(b), by means of materially false and fraudulent pretenses, representations, and promises, in connection with payments for health care services, namely HBOT-related items and services, in violation of 18 U.S.C. § 1347.

### The Purpose of the Conspiracy

16.     It was part of the conspiracy that **Stanley Thaw** and **Michael Kincaid** and others, known and unknown to the Grand Jury, would and did unlawfully enrich

**Indictment – Page 6**

themselves by:   (a) submitting false and fraudulent claims to Medicare and other health

care benefit programs as defined in 18 U.S.C. § 24(b) for HBOT-related items and

services; and (b) concealing from Medicare and other health care benefit programs, as

defined in 18 U.S.C. § 24(b), the nature and existence of the conspiracy.

The Manner and Means of the Conspiracy

17.     The manner and means by which **Stanley Thaw** and **Michael Kincaid** and

their coconspirators sought to accomplish the purpose of the conspiracy included, among

others, the following, all of which occurred in the Dallas Division of the Northern District

of Texas, and elsewhere:

18.     From on or about January 2008, to June 2011, **Stanley Thaw** and **Michael**

**Kincaid** engaged in a scheme to defraud Medicare and other health care benefit programs,

as defined in 18 U.S.C. § 24(b), by causing the submission of claims for reimbursement for

physician supervision and attendance under CPT code 99183 that falsely represented to

Medicare and other health care benefit programs, as defined in 18 U.S.C. § 24(b), that the

physician supervised and attended multiple HBOT sessions/dives for patients each day,

when that physician in fact had not, and only supervised and attended a patient's single

HBOT session/dive each day.

19.     Beginning on or about January 2008, the exact date being unknown to the

Grand Jury, through at least June 2011, **Stanley Thaw** and **Michael Kincaid** caused

marketers employed by their various companies to seek and obtain referrals from health

care providers, including physicians, for HBOT that would be supervised by physicians working for the various HBO2Works companies.

20.     On or about January 2008, **Stanley Thaw** and **Michael Kincaid** retained a Dallas-area health care consultant to perform an audit of their company's billing and collections agent.   On or about January 24, 2008, the consultant met with and provided **Stanley Thaw** and **Michael Kincaid** with a written report clearly stating CPT code 99183 was not time-based, and could only be submitted to Medicare once per each HBOT session/dive.   The written report given to **Stanley Thaw** and **Michael Kincaid** also informed them that due to the sheer number of improper CPT code 99183 services billed to Medicare, their company had been significantly overpaid, and it needed to refund those payments.

21.     **Stanley Thaw** and **Michael Kincaid** did not repay Medicare and continued to cause claims with multiple numbers of CPT code 99183 services to be billed to Medicare.

22.     On or about August 2008, **Michael Kincaid** directed staff and physicians employed by the various HBO2Works companies to submit claims with at least two CPT codes 99183 for each HBOT session.

23.     A physician employed by one of the HBO2Works companies, after confirming with a HBOT industry association, notified **Stanley Thaw** and **Michael Kincaid** and others, in writing, on or about December 1, 2008, that it was improper to bill

Medicare for two sessions of physician supervision and attendance under CPT code 99183 when the patient had only one HBOT session/dive.

24.     On or about December 16, 2008, **Michael Kincaid** asked the companies' billing agent to research whether multiple sessions under CPT code 99183 could be billed to Medicare.   On or about December 16, 2008, the billing company e-mailed **Michael Kincaid** informing him all articles stated that Medicare only paid for physician supervision and attendance under CPT code 99183 once per each patient's HBOT session.   The email to **Michael Kincaid** also recommended that they stop submitting claims to Medicare with multiple CPT codes 99183 and simply bill for one session at double the charge.

25.     On or about April 23, 2009, **Stanley Thaw** and **Michael Kincaid** caused to be submitted to Medicare, by and through Trailblazer Health Enterprises, LLC, claim number 451509134001960 requesting $1250.00 in reimbursement from Medicare for six sessions/dives of physician supervision and attendance of HBOT under CPT code 99183 even though the physician only supervised and attended one session/dive that day.

26.     On or about February 4, 2010, **Stanley Thaw** and **Michael Kincaid** caused to be submitted to Medicare, by and through Trailblazer Health Enterprises, LLC, claim number 452810244168730 requesting $1250.00 in reimbursement from Medicare for two sessions/dives of physician supervision and attendance of HBOT under CPT code 99183 even though the physician only supervised and attended one session/dive that day.

**Indictment – Page 9**

27.     **Stanley Thaw** and **Michael Kincaid** continued to direct claims be submitted to Medicare and other health care benefit programs containing multiple CPT codes 99183 through at least June 2011.

All in violation of 18 U.S.C. § 1349.

## Counts Two through Six
### Health Care Fraud
### (Violations of 18 U.S.C. §§ 1347 and 2)

28.    The Grand Jury adopts, realleges, and incorporates by reference all the allegations previously set forth in this Indictment.

29.    From on or about January 2008, to on or about June 2011, the exact dates being unknown to the Grand Jury, in the Dallas Division of the Northern District of Texas, and elsewhere, the defendants, **Stanley Thaw** and **Michael Kincaid**, and others known and unknown to the Grand Jury, each aided and abetted by each other and, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in 18 U.S.C. § 24(b), Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme and Artifice

30.    It was the purpose of the scheme and artifice for the defendants and their coconspirators to unlawfully enrich themselves by (a) submitting false and fraudulent claims to Medicare and other health care benefit programs for HBOT-related items and services; and (b) concealing from Medicare and other health care benefit programs the nature and existence of the scheme and artifice.

**Indictment – Page 11**

Acts in Execution of the Scheme and Artifice

31.     On or about the dates specified as to each count below in the Dallas Division

of the Northern District of Texas, and elsewhere, the defendants, **Stanley Thaw** and

**Michael Kincaid**, in connection with the delivery of and payment for health care benefits,

items, and services, did knowingly and willfully execute, and attempt to execute, the

above-described scheme and artifice to defraud a health care benefit program affecting

commerce, Medicare, and to obtain, by means of materially false and fraudulent pretenses,

representations, and promises, money and property owned by, and under the custody and

control of said health care benefit programs, the claims for reimbursement the defendants

knew were false and fraudulent, each such claim constituting a separate Count of this

Indictment.

| Count | Medicare Claim Number | Date of Service (on or about) | Number of Times 99183 Billed for Each Date of Service |
|:-----:|:---------------------:|:-----------------------------:|:-----------------------------------------------------:|
| 2 | 452809209038430 | July 21, 2009 | 2 |
| 3 | 452809251034330 | September 1, 2009 | 2 |
| 4 | 452208340318650 | October 24, 2008 | 2 |
| 5 | 452809202429690 | July 17, 2009 | 2 |
| 6 | 452910321425220 | November 15, 2010 | 2 |

In violation of 18 U.S.C. §§ 1347 and 2.

Counts Seven through Nine
Making a False Statement to a Financial Institution
(Violations of 18 U.S.C. §§ 1014 and 2)

32.     The Grand Jury adopts, realleges, and incorporates by reference all the

allegations previously set forth in this Indictment.

33.     Beginning on or about July 1, 2010, and continuing thereafter through on or

about April 2011, in the Dallas Division of the Northern District of Texas, and elsewhere,

the defendants, **Stanley Thaw** and **Kernell Thaw**, aiding and abetting each other,

knowingly made false statements for the purpose of influencing the action of Southwest

Bank and/or its mortgage division, a financial institution the accounts of which are insured

by the Federal Deposit Insurance Corporation, in connection with obtaining funds under

the control of Southwest Bank, in violation of 18 U.S.C. § 1014.

34.     Person B was the majority owner and president of Axxium Custom Homes

Dallas, LLC (Axxium) a builder of luxury homes throughout Texas since 1986.   Axxium

was located within the Northern District of Texas, Dallas Division.   Person B, **Stanley**

**Thaw**, and **Kernell Thaw** agreed on or about November 2009, to the sale of real property

located at XXXX Brandywine Lane, Frisco, Texas.

35.     Person B, through Axxium, entered into a promissory note and contract for

deed on November 1, 2009, to sell to **Stanley Thaw** and **Kernell Thaw** the Brandywine

Lane property.   Between November and December 2009, **Stanley Thaw** and **Kernell**

**Thaw** wired and/or caused to be issued to Person B checks drawn from the various

HBO2Works bank accounts.   **Stanley Thaw** and **Kernell Thaw** paid Person B a down

payment totaling at least $240,000.00 of the $2.15 million purchase price of the Brandywine Lane property.

36.    **Stanley Thaw** and **Kernell Thaw** did not cause the contract for deed to be filed in Collin County records until in or around June 27, 2011.

37.    On or about June 2010, the exact date being unknown to the Grand Jury, Person B discussed with **Stanley Thaw** financial difficulties in selling real property owned by Person B located at XXXX Linden Lane, Dallas, Texas.    Person B and **Stanley Thaw** agreed that **Stanley Thaw** and **Kernell Thaw** would obtain a loan to buy the Linden Lane property.

38.    Person B, **Stanley Thaw** and **Kernell Thaw** signed a contract for sale for the Linden Lane property on or about July 13, 2010.    Person B provided the purchasers with a contact at Southwest Bank for financing, and **Stanley Thaw** and **Kernell Thaw** started the loan application process at Southwest Bank sometime soon thereafter for the purchase of the Linden Lane property.

39.    On or about July 2010, the exact dates unknown to the Grand Jury, **Stanley Thaw** and **Kernell Thaw** completed a loan application with Southwest Bank to purchase the Linden Lane property.    In the Northern District of Texas, Dallas Division, **Stanley Thaw** and **Kernell Thaw** each knowingly made material false statements to Southwest Bank during the loan application process to obtain approximately $1.3 million to purchase the Linden Lane property as set forth below.    Had Southwest Bank known any of those

material statements were false, it would have rejected **Stanley Thaw's** and **Kernell Thaw's** loan application for the Linden Lane property and/or not funded the loan.

40.     In each of the materially false statements to Southwest Bank by **Stanley Thaw** and **Kernell Thaw,** made within the Northern District of Texas, Dallas Division, the loan application, the occupancy affidavit, and closing statement, warned **Stanley Thaw** and **Kernell Thaw** that a false statement was a federal crime and subjected the maker to criminal punishment.

41.     In reliance on the material false statements set forth below, made by **Stanley Thaw** and **Kernell Thaw** in the loan application, the occupancy affidavit, and closing statement, Southwest Bank, within the Dallas Division of the Northern District of Texas, wired approximately $1.3 million to fund the loan for the Linden Lane property.

| Count | Date (on or about) | Description of False Statement |
|-------|--------------------|--------------------------------|
| 7 | July 2010 | Failure to disclose Brandywine Lane property in the loan application as asset/liability in section VI. |
| 8 | November 12, 2010 | False statement in occupancy affidavit and financial status stating intended to occupy the Linden Lane property upon closing. |
| 9 | November 12, 2010 | False statement in section K, line 501 of closing statement agreeing that $360,000 in earnest money had been paid to seller. |

In violation of 18 U.S.C. §§ 1014 and 2.

<u>Counts Ten through Twelve</u>
Engaging in Monetary Transaction in Property
Derived From Specified Unlawful Activity
(Violations 18 U.S.C. §§ 1957(a) and 2)

42.     The Grand Jury adopts, realleges, and incorporates by reference all the

allegations set forth in this Indictment.

43.     On or about the dates set forth below, in the Dallas Division of the

Northern District of Texas, and elsewhere, the defendants, **Stanley Thaw, Michael**

**Kincaid**, and **Kernell Thaw**, aided and abetted by others known and unknown to the

Grand Jury, did knowingly engage and attempt to engage in monetary transactions,

affecting interstate and foreign commerce, in criminally-derived property of a value

greater than $10,000, derived from specified unlawful activity, namely health care fraud,

in violation of 18 U.S.C. § 1347, each such transaction, set out below, constituting a

separate count of this Indictment.

| Count | Defendant | Date (on or about) | Amount | Description |
|-------|-----------|--------------------|--------|-------------|
| 10 | **Stanley Thaw** | January 18, 2011 | $53,000.00 | JP Morgan Chase Bank check number 5177, payable to A.T., and deposited in Wells Fargo account ******9884. |
| 11 | **Michael Kincaid** | October 30, 2010 | $45,000.00 | JP Morgan Chase Bank check number 5073, payable to K-4 Holdings, and deposited in JP Morgan Chase Bank account *****5475. |
| 12 | **Kernell Thaw** | October 25, 2010 | $15,333.87 | JP Morgan Chase Bank check number 5070, payable to Neiman Marcus, drawn on account number*****6820. |

In violation of 18 U.S.C. §§ 1957(a) and 2.

## Notice of Criminal Forfeiture
### (18 U.S.C. § 982(a)(7); 18 U.S.C. § 982(a)(1))

Upon conviction for any of the offenses charged in Counts Two through Six of this Indictment, defendants **Stanley Thaw** and **Michael Kincaid** shall, pursuant to 18 U.S.C. § 982(a)(7), forfeit to the United States all property, real or personal, constituting or derived, directly or indirectly, from gross proceeds traceable to the commission of the respective offense, including, but not limited to, the following:

a. The gross proceeds traceable to the commission of the offense, in the form of a money judgment.

b. $32,662.72 in funds seized from account number *****7398 held in the name of Hyperbaric of Texas PLLC at JP Morgan Chase Bank.

Upon conviction for any of the offenses charged in Counts Ten through Twelve of this Indictment, defendants **Stanley Thaw, Michael Kincaid**, and **Kernell Thaw** shall, pursuant to 18 U.S.C. § 982(a)(1), forfeit to the United States all property, real or personal, involved in, or traceable to property involved in, the respective offense, including, but not limited to, the following:

a. the value of the property involved in the offense, in the form of a money judgment.

Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), if any of the above-referenced property subject to forfeiture, as a result of any act or omission of any of the defendants, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been

commingled with other property which cannot be subdivided without difficulty, it is the

intent of the United States of America to seek forfeiture of any other property of that

defendant up to the value of the previously-described property subject to forfeiture.


A TRUE BILL


FOREPERSON


SARAH R. SALDAÑA
UNITED STATES ATTORNEY


SEAN MCKENNA
Assistant United States Attorney
Texas State Bar No. 24007652
MICHAEL MCCARTHY
Assistant United States Attorney
Texas State Bar No. 24072230
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214.659.8600
Facsimile:   214.659.8812


**Indictment – Page 18**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

THE UNITED STATES OF AMERICA

v.

STANLEY THAW
MICHAEL KINCAID
KERNELL THAW

**SEALED**

**8-12CR-261-P**

---

SEALED INDICTMENT

18 USC § 1349(18 USC § 1347)
Conspiracy to Commit Health Care Fraud

18 USC §§ 1347 and 2
Health Care Fraud

18 USC §§ 1014 and 2
Making a False Statement to a Financial Institution

18 USC §§ 1957(a) and 2
Engaging in Monetary Transaction in Property
Derived from Specified Unlawful Activity

18 USC § 982(a)(7); 18 USC § 982(a)(1)
Notice of Criminal Forfeiture

12 Counts

---

A true bill rendered

----------------------------------------------------------------------------------------   _Andrea L. Pugh_

DALLAS                                                                            FOREPERSON

Filed in open court this _6th_ day of September, 2012.

----------------------------------------------------------------------------------------
                                                                                      Clerk

**Warrant to be issued for: STANLEY THAW, MICHAEL KINCAID, KERNELL THAW**

----------------------------------------------------------------------------------------
UNITED STATES DISTRICT/MAGISTRATE JUDGE

No Criminal matter pending
**Related Criminal Court No.:   3:12-CR-212-P**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF TEXAS

| RELATED CASE INFORMATION | | |
|---|---|---|
| Superseding Indictment/Information: | ____Yes | _X_No |
| New Defendant: | _X_Yes | ____No |
| Pending CR Case in NDTX: | ____Yes | _X_No |
| Related Criminal Court No.: | 3:12-CR-212-P | |
| If Yes, Number:_____ | | |
| Search Warrant Case Number: _____ | | |
| Rule 20 from District of _____ | | |

1.  **Defendant Information**

    Juvenile:____Yes  _X_No

    If Yes, Matter to be SEALED:

    _X_Yes  ____No

    **ORIGINAL**

    **RECEIVED**

    SEP - 6 2012

    CLERK U.S. DISTRICT COURT
    NORTHERN DISTRICT OF TEXAS

    **SEALED**

    Defendant Name          Michael Kincaid (2)

    Alias Name

    Address

    County in which offense was committed:          Dallas   3-12CR-261-P

2.  **U.S. Attorney Information**

    Sean McKenna                          Bar #: TX 24007652
    Michael McCarthy                      Bar #: TX 24072230

3.  **Interpreter**

    ____Yes  _X_No    If Yes, list language and/or dialect: _____

4.  **Location Status – WARRANT TO BE ISSUED**

    _____Already in Federal Custody as of
    _____Already in State Custody
    _____On Pretrial Release

5.  **U.S.C. Citations**

    Total # of Counts as to This Defendant: ___9___    Petty_____  Misdemeanor_____  Felony__X__

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 USC § 1349(18 USC § 1347) | Conspiracy to Commit Health Care Fraud | 1 |
| 18 USC §§ 1347 and 2 | Health Care Fraud | 2-6 |
| 18 USC §§ 1957(a) and 2 | Engaging in Monetary Transaction in Property Derived from Specified Unlawful Activity | 10-12 |
| 18 USC § 982(a)(7); | Notice of Criminal Forfeiture | |
| 18 USC § 982(a)(1) | | |

Date ___9/5/12___          Signature of AUSA: _____

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF TEXAS

| RELATED CASE INFORMATION | | |
|---|---|---|
| Superseding Indictment/Information: | ____Yes | X_No |
| New Defendant: | X_Yes | ____No |
| Pending CR Case in NDTX: | ____Yes | X_No |
| Related Criminal Court No.: 3:12-CR-212-P | | |
| If Yes, Number:_____ | | |
| Search Warrant Case Number: _____ | | |
| Rule 20 from District of _____ | | |

1.  **Defendant Information**

    Juvenile:____Yes __X__No

    If Yes, Matter to be SEALED:

    __X__Yes _____No

    Defendant Name _____ Kernell Thaw (3) _____

    Alias Name _____

    Address _____

    County in which offense was committed: _____ Dallas _____

    **ORIGINAL**

    **RECEIVED**

    **SEP – 6 2012**

    CLERK U.S. DISTRICT COURT
    NORTHERN DISTRICT OF TEXAS

    **SEALED**

2.  **U.S. Attorney Information**

    Sean McKenna                    Bar #: TX 24007652
    Michael McCarthy                Bar #: TX 24072230

3.  **Interpreter**

    ____Yes __X_No    If Yes, list language and/or dialect: _____

    **3-12CR-261-P**

4.  **Location Status – WARRANT TO BE ISSUED**

    _____Already in Federal Custody as of _____
    _____Already in State Custody
    _____On Pretrial Release

5.  **U.S.C. Citations**

    Total # of Counts as to This Defendant: ___6___    Petty_____ Misdemeanor_____ Felony__X__

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 USC §§ 1014 and 2 | Making a False Statement to a Financial Institution | 7-9 |
| 18 USC §§ 1957(a) and 2 | Engaging in Monetary Transaction in Property Derived from Specified Unlawful Activity | 10-12 |
| 18 USC § 982(a)(7); 18 USC § 982(a)(1) | Notice of Criminal Forfeiture | |

Date __9/5/12_____    Signature of AUSA: _____

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF TEXAS

| RELATED CASE INFORMATION | | |
|---|---|---|
| Superseding Indictment/Information: | ____Yes | _X_No |
| New Defendant: | _X_Yes | ____No |
| Pending CR Case in NDTX: | ____Yes | _X_No |
| Related Criminal Court No.: 3:12-CR-212-P | | |
| If Yes, Number:_____ | | |
| Search Warrant Case Number: _____ | | |
| Rule 20 from District of _____ | | |

1.  **Defendant Information**

    Juvenile:____Yes  _X_No

    If Yes, Matter to be SEALED:

    _X_Yes  _____No

    Defendant Name _____Stanley Thaw (1)_____

    Alias Name  _____

    Address  _____

    County in which offense was committed:  _____Dallas

2.  **U.S. Attorney Information**

    Sean McKenna                    Bar #: TX 24007652
    Michael McCarthy                Bar #: TX 24072230

3.  **Interpreter**

    ____Yes  _X_No    If Yes, list language and/or dialect: _____

4.  **Location Status – WARRANT TO BE ISSUED**

    _____Already in Federal Custody as of
    _____Already in State Custody
    _____On Pretrial Release

SEALED

RECEIVED
SEP -6 2012
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

ORIGINAL

3-12CR-261-P

5.  **U.S.C. Citations**

    Total # of Counts as to This Defendant: ___12___   Petty_____ Misdemeanor_____ Felony___X___

| **Citation** | **Description of Offense Charged** | **Count(s)** |
|---|---|---|
| 18 USC § 1349(18 USC § 1347) | Conspiracy to Commit Health Care Fraud | 1 |
| 18 USC §§ 1347 and 2 | Health Care Fraud | 2-6 |
| 18 USC §§ 1014 and 2 | Making a False Statement to a Financial Institution | 7-9 |
| 18 USC §§ 1957(a) and 2 | Engaging in Monetary Transaction in Property Derived from Specified Unlawful Activity | 10-12 |
| 18 USC § 982(a)(7); 18 USC § 982(a)(1) | Notice of Criminal Forfeiture | |

Date ___9/5/12_____    Signature of AUSA: _____